UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHAWN C. CARTER,

                    Plaintiff,

      -against-

HIGHLAND CAPITAL MANAGEMENT, L.P.
and NEXBANK SSB,

                    Defendants.

-------------------------------------------------------------------X

Index No. 10 CIV 0854 (DC)

 

## MEMORANDUM OF LAW OF MOTION TO PARTIALLY DISMISS AND STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT

Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3500
*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 3

    Background ............................................................................................................ 3

    Plaintiff's Acknowledgement of the Reason for
    the Pre-Negotiation Agreement And the Terms Thereof.................................... 5

    Portions of the Complaint Are Unnecessary,
    Prejudicial and Violate the Pre-Negotiation Agreement .................................. 7

    Plaintiff Has Improperly Included
    The Entirety of Paragraphs 22-25, Exhibits A-C and
    Portions of Paragraphs 27-29 and 32 in the Complaint .................................. 10

    The Complaint's Fifth Cause of Action.......................................................... 12

ARGUMENT .................................................................................................................. 13

I.    THS COURT SHOULD STRIKE THE PORTIONS OF PLAINTIFF'S
    COMPLAINT AND ITS EXHIBITS, AS WELL AS THE FIFTH
    CAUSE OF ACTION, UNDER THE EXPRESS TERMS OF THE
    PRE- NEGOTIATION AGREEMENT AND FRE 408 .................................. 13

II.    IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS
    THE FIFTH CAUSE OF ACTION BECAUSE IT IS DUPLICATIVE OF
    PLAINTIFF'S FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT ........ 17

CONCLUSION ............................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Berry v. Lee*,
    428 F. Supp. 2d 546 (N.D. Tex. 2006) ...........................................................14

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).................................................................................3

*Dalton v. Union Bank of Switz.*,
    134 A.D.2d 174, 520 N.Y.S. 2d 764 (1st Dep't 1987) ....................................18

*DEV Indus., Inc. v. Rockwell Graphic Sys., Inc.*,
    1992 WL 100908 (N.D. Ill. May 4, 1992) .......................................................15

*E-Z Bows, LLC v. Prof'l Prod. Research Co.*,
    No. 00 Civ. 8670 (LTS)(GWG), 2003 WL 22416174 (S.D.N.Y. Oct. 23, 2003) .............14

*Federal Home Mortgage Corp. v. Drofan Realty Corp.*,
    1996 WL 15680 (S.D.N.Y. 1996)....................................................................16

*Kelly v. L.L. Cool J*,
    145 F.R.D. 32 (S.D.N.Y. 1992) .......................................................................14

*McMahan & Co. v. Bass*,
    250 A.D.2d 460, 673 N.Y.S.2d 19 (1st Dep't 1998) .......................................17

*Ortix Credit Alliance*,
    256 A.D.2d 114, 682 N.Y.S.2d 160 (1st Dep't 1998) .................................17, 18

*PSI Int'l, Inc. v. Ottimo*,
    272 A.D.2d 279, 708 N.Y.S.2d 100 (1st Dep't 2000) .....................................17

*R.G. Group, Inc. v. Horn & Hardart Co.*,
    751 F.2d 69 (2d Cir. 1984)...............................................................................16

*Sudul v. Computer Outsourcing Serv.*,
    868 F. Supp 59 (S.D.N.Y. 1994)...................................................................17, 18

*Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*,
    407 F. Supp. 2d 401 (D. Conn. 2006) .........................................................14, 15

*Volk v. Ligget*,
    No. 96 Civ. 1921 (SS), 1997 WL 107458 (S.D.N.Y. March 11, 1997) ............18

## Statutes

Fed. R. Civ. P. 12(f) ................................................................................1, 2, 13, 14, 17, 18

Fed. R. Civ. P. 12(ii) ...........................................................................................................1

Fed. R. Civ. P. 12(b)(6) ...................................................................1, 2, 14, 17, 18, 19

Fed. R. Civ. P. 12(3) .............................................................................................2, 17, 18

## Regulations

FRE 408 ...................................................................................................1, 7, 13, 14

Defendants Highland Capital Management, L.P. ("Highland") and NexBank SSB ("NexBank", Highland and NexBank are hereinafter referred to collectively as "Defendants") respectfully submit this Memorandum of Law in support of their motion: (i) to strike certain portions of Plaintiff's Complaint dated February 2, 2010 (the "Complaint", a copy of which is annexed to the Declaration of David E. Ross dated April 30, 2010 "Ross Decl." as Exhibit A) pursuant to Fed R. Civ. P. 12(f), and (ii) to dismiss the Fifth Cause of Action of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's Complaint and certain exhibits annexed to it should be stricken from Plaintiff's Complaint in their entirety, and Plaintiff's Fifth Cause of Action should be dismissed. The Complaint improperly referrers to, and contains factual allegations based on the content of, communications that were part of settlement negotiations between the parties under the express terms of the parties' broadly worded Pre-Negotiation Agreement dated August 3, 2009 (the "Pre-Negotiation Agreement", a copy of which is annexed to the Ross Decl. as Exhibit B) and Rule 408 of the Federal Rules of Evidence ("FRE 408"), both of which bar Plaintiff's allegations and claims. Indeed, the Pre-Negotiation Agreement *inter alia*, provides that all communications after [July 13, 2009] are "inadmissible for any purpose whatsoever in any judicial or similar proceeding" against any party, and that the restriction on admissibility of such evidence was to be "broader" than FRE 408.

The only real issue in this case is whether Defendants timely and properly rejected a December 22, 2009 "Tender Delivery" from Plaintiff. If Plaintiff's tender was proper, Plaintiff may be entitled to certain relief. Plaintiff cannot bolster its claims and improperly prejudice Defendants by including irrelevant allegations and exhibits that are expressly barred by the Pre-

1

Negotiation Agreement. By striking these improper allegations and dismissing the Fifth Cause of Action, the Court will appropriately narrow the issues in this matter and change the complexion of this case entirely. By granting Defendants' motion this case will go from a bad faith and fraud case, which is what Plaintiff is improperly trying to accomplish, into a garden variety breach of contract case in which the central and sole question will be whether Plaintiff's tender deliveries to Defendants on December 22, 2009 satisfied Plaintiff's obligations under the Carry Guaranty, which is what this case truly involves. Discovery will thus be streamlined and the parties and the Court can expect an orderly and quick resolution of this matter.

The remedy for Plaintiff's breach of the Pre-Negotiation Agreement is straightforward -- any reference to the discussions or communications from July 13, 2009 until the "Tender Delivery" of December 22, 2009 must be stricken from the Complaint and any cause of action flowing therefrom should be dismissed. As a result, the Court should grant Defendants' motion in its entirety and issue an Order: (1) striking paragraphs 22-25 and 57-62 of Plaintiff's Complaint and Exhibits A-C attached thereto in their entirety; (2) striking portions of paragraphs 27, 28, 29 and 32 in accordance with Fed. R. Civ. P. 12(f); and (3) dismissing the Fifth Cause of Action of Plaintiff's Complaint (paragraphs 57-62) pursuant to Fed R. Civ. P. 12(b)(6). Further, even assuming that the aforementioned allegations are not stricken, Plaintiff's Fifth Cause of Action should be independently dismissed pursuant to Fed R. Civ. P. 12(b)(6) because it improperly seeks to bootstrap a fraud claim into a breach of contract claim.

2

## STATEMENT OF FACTS

### Background

Taking the facts alleged in the Complaint as true, this action arises from the following facts[1]: On August 6, 2007 Plaintiff entered into a guaranty agreement (the "Bad Acts Guaranty") and a guaranty of carry obligations (the "Carry Guaranty") with regard to a senior loan (the "Senior Loan") entered into by and between non-party borrower J Hotels Fee Owner LLC ("Fee Owner") and Column Financial, Inc. ("Column") for the purchase of real property located at 511 West 21st Street, New York, New York (the "Property")[2]. Complaint, ¶¶7-13. Also on August 6, 2007, non-party J Hotels Mezzanine I LLC ("J Mezz") borrowed $11.8 million (the "Mezzanine Loan") from two non-parties. Complaint, ¶14. On that same date, Plaintiff entered into a guaranty of carry obligations (the "Mezz Carry Guaranty") with regard to the Mezzanine Loan. Complaint, ¶15. The Senior Loan, Bad Acts Guaranty and Mezz Carry Guaranty (the Senior Loan, Bad Acts Guaranty, Carry Guaranty and the Mezz Carry Guaranty are hereinafter referred to as the "Loan Documents") were later assigned by Column to Defendant Highland, the current owner of the Senior Loan and holder of the Loan Documents. Complaint, ¶18. Defendant NexBank is the servicer of the Senior Loan. Id.

Pursuant to the terms of the Carry Guaranty, Plaintiff guaranteed the payment of certain defined "Guaranteed Obligations" of Fee Owner, which consisted of the ongoing carrying costs of the property at issue, including, but not limited to, real estate taxes, insurance and interest on

---

[1]   The "Statement of Facts" is taken from Plaintiff's Complaint, the allegations of which, solely for purposes of this motion, are assumed to be true.

[2]   All documents referenced herein are either attached to or referenced in the Complaint. As a result, it is proper for Defendants to use them in this motion. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2nd Cir. 2002) (holding that it is proper to consider documents incorporated into the Complaint).

4187-002 Doc# 113

the Senior Loan. Complaint, ¶11. The Mezz Carry Guaranty provided identical protection to Fee

Owner and to J Mezz. Complaint, ¶17.

Section 1.2 of the Carry Guaranty provided that Plaintiff's obligations under the Carry

Guaranty and the Mezz Carry Guaranty could be extinguished on a defined "Tender Date."

Complaint, ¶12. Specifically, Section 1.2 of the Carry Guaranty defines the "Tender Date" as the

date when:

> (a) Fee Owner delivers, to the lender, a deed to the Property in lieu of foreclosure,
> (b) the guarantors pay all sums owing under the Carry Guaranty, (c) all transfer
> taxes relating to the transfer of the Property in lieu of foreclosure are paid, (d) all
> necessary documents relating to the transfer of the Property are delivered to the
> lender, (e) the Environmental Reserve is replenished or supplemented in an
> amount equal to 125% of the amount reasonably determined by the lender's
> consultant to be sufficient to complete the environmental remediation of the
> Property, and (f) Fee Owner and the guarantors have ratified their environmental
> indemnification obligations.

Id. Emphasis added.

Plaintiff alleges, among other things, that on December 22, 2009, he made a proper and

valid tender in accordance with Section 1.2 of the Carry Guaranty, thereby terminating his

obligations as of that same date. Complaint, ¶¶26-27.  Plaintiff further alleges that Defendants

misrepresented their supposed "oral" representation that, before November 30, 2009 they would

draft and provide Plaintiff with a deed so that he could use the deed that Plaintiff prepared as part

of the tender he was going to provide to Defendants under Section 1.2(d) of the Carry Guaranty

(even though Section 1.2(d) of the Carry Guaranty places the responsibility for preparing the

tender documents upon Plaintiff). Complaint, ¶¶12, 24-25, 28-30.  Finally, Plaintiff also alleges

Defendants improperly and untimely rejected Plaintiff's December 22, 2009 tender, thereby

subjecting him to additional carrying costs and other fees. Complaint, ¶31. Plaintiff seeks

declaratory relief (First, Second and Third Causes of Action), damages for breach of contract (Fourth Cause of Action) and damages for Fraud (Fifth Cause of Action).

**Plaintiff's Acknowledgement of the Reason for**
**the Pre-Negotiation Agreement And the Terms Thereof**

As acknowledged in the Complaint, before the Senior Loan's maturity date of the Senior Loan (August 6, 2009), Plaintiff (as well as the other guarantors and the Fee Owner) sought permission to discuss the upcoming maturity date, the status of the Property, particularly in light of the "real estate crash and the devaluation of the property values in New York," and the "general lack of availability of project financing." Complaint, ¶21. However, as a pre-condition to engaging in any such discussions, Highland required Plaintiff to enter into the Pre-Negotiation Agreement (to which NexBank was also a party). Complaint, ¶¶22.

Section 6 of the Pre-Negotiation Agreement entitled "<u>Inadmissible Evidence</u>" is broadly worded and sets forth that all conduct and communications of any kind between the parties would be confidential and inadmissible in any future litigation or proceeding, and that its bar to admissibility was intended to be even "broader" than that under FRE 408. Specifically, Section 6 states in relevant part:

> From and after the date hereof, <u>all evidence of conduct and communications of any nature whatsoever</u> (whether oral or written, or express or implied) of any of the Parties <u>in connection with the discussions that are the subject of this Agreement, or in any meetings or correspondence relating to possible modification of the Loan Documents</u> (in each case, whether in the future or prior to the date hereof) <u>from and after July 13, 2009 shall be inadmissible for any purpose whatsoever in any judicial or similar proceeding. The foregoing sentence is intended to be broader than the restrictions on admissibility that may be contained in the Evidence Code of the State of New York and Rule 408 of the Federal Rules of Evidence.</u> Likewise, the discussions and all documents prepared in connection therewith shall be confidential and shall not be disclosed to any third party except for reasonably necessary disclosures to agents, lenders, investors, representatives, lawyers, and accountants, and except as may be required by law. <u>Furthermore, such conduct, communications, discussions and documents shall not be used in any litigation to indicate culpability, weakness of position, admission of liability or otherwise admit any obligations due and owing to or from any Party hereto.</u>

Pre-Negotiation Agreement, § 6 (emphasis added).

In addition to the blanket inadmissibility clause of Section 6, Section 1, paragraph 2 of the

Pre-Negotiation Agreement also states in relevant part (emphasis below added):

> The conduct by and communications among the Parties (from and after July 13, 2009) shall not constitute offers, acceptances, contracts, or courses of dealing and <u>shall have no effect whatsoever unless and until reduced to a written agreement</u>.

Further, the remainder of Section 1 as well as Sections 2 and 8 of the Pre-Negotiation Agreement

also contain unambiguous language barring the above-referenced allegations and the Fifth Cause

of Action. These sections of the Pre-Negotiation Agreement state in pertinent part as follows:

> The Parties acknowledge and agree that (a) no Party has any obligation whatsoever to discuss, negotiate or to agree to any restructuring of the Loans or to any modification, extensions, amendment, restructuring or reinstatement of the Loans or any of the Loan Documents, or to forbear or refrain from exercising or enforcing its rights and remedies under the Loan Documents… <u>Borrower and Guarantors specifically acknowledge with respect to any statement on or after June 13, 2009, that they have no basis for, and are not, relying on any prior statements by NEXBANK or Lender (or any of their respective representatives) nor any anticipated action by NEXBANK or Lender</u>.

Pre-Negotiation Agreement, § 1, ¶¶1-2 (emphasis added).

> The Parties hereby agree that no Party shall have any obligation to continue with the discussions, <u>and any Party, at such Party's sole and absolute discretion, may terminate the discussions at any time and for any reason or no reason, with or without cause upon notice, written or oral, without any liability</u> or obligation to the other Parties hereto.

Pre-Negotiation Agreement, § 1, ¶3 (emphasis added).

> …execution of this Agreement or undertaking or continuing the discussion contemplated herein, neither NEXBANK nor Lender or any other servicer or representative thereof has made any promise, commitment, or representation whatsoever, nor has NEXBANK or Lender (or any of their respective representatives) incurred any obligation to Borrower or Guarantors to modify the terms of the Loan Documents.

Pre-Negotiation Agreement, § 2, ¶2 (emphasis added).

6

> Each Party hereby acknowledges and agrees that neither this Agreement nor any Party's (nor their respective representatives') participation in any discussions or negotiations contemplated herein: (a) <u>creates any obligation to modify, renew, compromise, extend, reinstate or otherwise amend the Loan Documents</u>;…

Pre-Negotiation Agreement, § 1, ¶8 (emphasis added).

However, notwithstanding the sections referenced above, the Pre-Negotiation Agreement's expansion of FRE 408, Plaintiff's Complaint is replete with inadmissible, confidential information that has been improperly inserted into the Complaint.

**Portions of the Complaint Are Unnecessary,**
**Prejudicial and Violate the Pre-Negotiation Agreement**

Notwithstanding the terms of the Pre-Negotiation Agreement, in his Complaint, Plaintiff alleges that:

> "This action arises out of the efforts by defendants to bleed additional funds from plaintiff, a guarantor of a loan owned by Highland.  Because plaintiff and the other guarantors do not have personal liability for payment of the principal amount of that loan but did have personal liability <u>defendants embarked on a bad faith course of conduct aimed at extracting additional payments of interest and carrying costs</u>."

Complaint ¶6.

The Complaint readily admits that negotiations continued between August 2009 and November 20, 2009, a period during which the Pre-Negotiation Agreement expressly provides that no party can or will rely on anything either party says, and that no party may, in any subsequent proceeding refer to any communications between the parties. Complaint ¶¶22-23. However, (and notwithstanding the use of the December 22, 2009 "Tender Date" throughout Plaintiff's Complaint), all of the facts upon which Plaintiff relies in support of his claim that Defendants supposedly engaged in a "bad faith course of conduct" are communications that occurred during this period and, thus, are confidential and inadmissible under the express terms of the Pre-Negotiation Agreement.

7

According to the plain language of the Complaint: (1) Plaintiff expressly acknowledges the existence of the Pre-Negotiation Agreement (Complaint, ¶21) and; (2) that the meeting on November 20, 2009 which led to the alleged "offending" allegations and the Fifth Cause of Action were the result of Plaintiff's request "to discuss a restructuring of the loan" (Complaint, ¶23), thereby rendering what was discussed at that meeting confidential and off limits in this lawsuit. To that end, Plaintiff's Complaint states in pertinent part as follows:

> As a pre-condition to permitting Fee Owner to have any conversations with is lender, Highland Required Fee Owner and the guarantors to enter into a pre-negotiation agreement [the Pre-Negotiation Agreement]. NexBank, Highland and Fee Owner and the guarantors entered into such an agreement on or about August 3, 2009 [the Pre-Negotiation Agreement].

Complaint ¶21.

> On November 20, 2009, the parties met at the office of Highland's counsel, and Fee Owner and the guarantors made a final attempt to discuss a restructuring of the Senior Loan…

Complaint ¶23.

These alleged facts are then used as a foundation to assert various allegations and a cause of action for fraud against the Defendants. Briefly, the First, Second and Third Causes of Action seek declaratory relief in pertinent part as follows:

> **First Cause of Action**: declaring that "the "Tender Date" was satisfied as of December 22, 2009, thereby terminating all obligations under the "Carry Guaranty" as of December 22, 2009";

Complaint ¶39.

8

**Second Cause of Action:** declaring that "(a) Highland was not entitled to withdraw any of the environmental reserve funds, (b) Highland must return to the Environmental Reserve all of the funds it diverted from Fee Owner's reserve account, (c) plaintiff is not required to replenish or supplement the Environmental Reserve and (d) in the alternative, the Environmental Reserve funds withdrawn by Highland should be applied to reducing plaintiff's obligations under the Carry Guaranty";

Complaint ¶45

**Third Cause of Action**: declaring "that no amounts were owed by Plaintiff under the Carry Guaranty on the <u>December 22, 2009 Tender Date</u>..."

Complaint ¶50.

Tellingly, the December 22, 2009 "Tender Date" is the sole date used by Plaintiff in all of his requests for declaratory relief.

The Fourth Cause of Action sounds in breach of contract and seeks approximately $3.7 million, which Plaintiff claims "represent[s] the additional liability for additional interest and other costs incurred by plaintiff" as a result of Defendants' failure to follow through on their purported promise to provide certain documents to Plaintiff and their failure to timely respond to Plaintiff's December 22, 2009 tender. Complaint ¶¶54-56. In the Fifth Cause of Action, Plaintiff seeks unspecified damages for fraud by claiming that Defendants misrepresented their intent to deliver to Plaintiff a form of Deed <u>that section 1.2(d) of the Carry Guaranty calls for Plaintiff to prepare and deliver</u>. Complaint ¶¶57-62

As set forth in the argument section below, while Plaintiff is certainly free to allege damages from what he believes was Defendants' rejection of a proper tender (an allegation that Defendants will deny because the tender was defective), the Pre-Negotiation Agreement does not permit Plaintiff to allege any of the allegations sought to be stricken herein. These "facts" and the Fifth Cause of Action, are based solely upon alleged conduct which took place during settlement negotiations, making them subject to, and barred by, the Pre-Negotiation Agreement.

9

4187-002 Doc# 113

Further, even *assuming arguendo* that the aforementioned allegations are true, which they are

not, as nothing was ever "reduced to a written agreement", which was required under the express

terms of the Pre-Negotiation Agreement, the Plaintiff cannot use such "facts" in his Complaint.

**Plaintiff Has Improperly Included**
**The Entirety of Paragraphs 22-25, Exhibits A-C and**
**Portions of Paragraphs 27-29 and 32 in the Complaint**

Numerous offending portions of the Complaint are contained within the full text of

paragraphs 22-25, Exhibits A-C, and in portions of paragraphs 27-29 and 32 of the Complaint.

They are as follows and should be stricken:

> Between August and November 2009, NexBank, Highland, Fee Owner and the
> guarantors engaged in negotiations concerning a potential restructuring of the
> Senior Loan, but those negotiations accomplished little because Highland and
> NexBank, acting in bad faith, insisted upon requirements that they knew Fee
> Owner could not reasonably undertake.

Complaint ¶22.

> When it became apparent that the parties could not agree upon a restructuring or
> settlement of the Senior Loan, the parties discussion turned to the exercise of Fee
> Owner's right to deliver, to Highland, a deed in lieu of foreclosure of the
> Property.

*Id.* ¶23.

> At that November 20 meeting, plaintiff explicitly advised Highland's counsel that
> the expeditious completion of this process was crucial to plaintiff since the Senior
> Loan was arguably accruing interest of approximately $20,000 per day, plus other
> carrying costs, and the Mezzanine Loan was arguably accruing interest of
> approximately $8,000 per day, plus other carrying costs.  In response, Highland's
> representative, Ted Dameris, agreed that Highland would cooperate with the
> exercise of the guarantor's rights with respect to the tender and Highland's
> counsel agreed to deliver Highland's preferred form of deed to plaintiff's counsel
> on or before November 30, 2009.  In a telephone call between plaintiff's and
> Highland's counsel on November 25, Highland's counsel reaffirmed this promise.

*Id.* ¶24.

> Acting in bad faith, so that interest and carrying costs would continue to run,
> Highland's counsel failed to keep its promise. On November 30, December 2,

December 7, December 8, and December 10, 2009, plaintiff's counsel sent e-mails to Highland's counsel inquiring about the status of the promised draft of the deed (copies of those emails attached as Exhibit A). Ignoring its obligation to act in good faith and deal fairly, Highland responded that plaintiff should continue to wait. On December 11, 2009, plaintiff's counsel sent an e-mail to Highland's counsel (copy attached as Exhibit B) demanding that Highland supply the draft deed, and advising that, if Highland failed to do so, plaintiff's counsel would prepare it on his own. Highland's counsel responded, in an e-mail on dated December 14, 2009 (copy attached as Exhibit C), that, notwithstanding Highland's earlier promise and its two weeks of evasion, Highland "was not in a position to deliver any drafts of proposed deed in lieu conveyance documents at this time."

*Id.* ¶25.

(d) Although Highland had already acted in bad faith and broken its express promises…

*Id.* ¶27.

Highland had duplicitously stalled the tender since November 20 by initially promising to provide its preferred form of deed, then, after two weeks of misrepresentation and evasion, reneging on its promise.

*Id.* ¶28.

Highland, continuing its pattern of acting in bad faith an ignoring its contractual obligations…

*Id.* ¶29.

Having learned to expect rascality from Highland…

*Id.* ¶32.

Additionally, as set forth in Paragraph 25 of the Complaint above, Plaintiff has also improperly attached e-mails as Exhibits A-C to the Complaint that stem solely from negotiations that are barred by the terms of the Pre-Negotiation Agreement (copies of Exhibits A-C to the Complaint are collectively annexed to the Ross Decl. as Exhibit C). As a result, they should also be stricken.

4187-002 Doc# 113

**The Complaint's Fifth Cause of Action**

Similarly, the unambiguous terms of the Pre-Negotiation Agreement also bar the Fifth Cause of Action (Complaint, ¶¶ 57-62) because these allegations are premised entirely upon confidential and inadmissible discussions that are subject to the terms of the Pre-Negotiation Agreement. Specifically, the Complaint's Fifth Cause of Action (fraud) alleges as follows:

> Under the terms of the pertinent loan documents, plaintiff was entitled to terminate his obligations under the Carry Guaranty and the Mezz Carry Guaranty by satisfying the requirements of the Tender Date as set forth in Section 1.2 of the Carry Guaranty.

Complaint ¶58.

> On November 20, 2009, at the meeting at the offices of Highland's counsel, Meister Seelig & Fein, Ted Dameris, a representative of Highland, said, to plaintiff's representative and plaintiff's counsel, that Highland would be happy to receive and retain the Property and would cooperate in the process of the delivery of the deed in lieu of foreclosure. Following that, Stuart I. Rich, an attorney for Highland, said, to plaintiff's representative and plaintiff's counsel, that he would prepare and send his requested form of deed to plaintiff's counsel on or before November 30, 2009. Mr. Rich later confirmed his agreement to deliver the form deed in a telephone call with plaintiff's counsel on November 25.

*Id.* ¶59.

> These statements by Messrs. Dameris and Rich were materially and knowingly false at the time they were made. Mr. Dameris and Mr. Rich knew that Highland had no intention of supplying plaintiff with a form of deed. Instead, by these statements Messrs. Dameris and Rich sought to conceal their true intentions to delay the Tender Date as long as possible.

*Id.* ¶60.

12

> Plaintiff reasonably relied on these representations of Mr. Dameris and Mr. Rich and refrained from beginning preparation of a deed to the Property, a required element of the Tender Date, until December 14, 2009, when Mr. Rich finally admitted that Highland would not be supplying a form of a deed. Had plaintiff known of the true facts—that Highland had no intention of supplying a form of a deed—plaintiff would have prepared the deed weeks earlier, would have made the Tender Delivery weeks earlier and would have avoided liability for additional interest under the Carry Guaranty and the Mezz Carry Guaranty.

Complaint ¶61.

> By reason of foregoing, plaintiff has been damaged in an amount to be determined at trial.

*Id.* ¶62.

As set forth below, given the clear and unambiguous language of the Pre-Negotiation Agreement, Defendants' respectfully request that the Court issue an Order: (1) striking paragraphs 22-25, 57-62 of Plaintiff's Complaint in their entirety and Exhibits A-C attached to the Complaint; (2) striking the above-referenced portions of paragraphs 27, 28, 29 and 32 of Plaintiff's Complaint and; (3) dismissing the Fifth Cause of Action of Plaintiff's Complaint. Furthermore, even if none of the aforementioned allegations are stricken, the Fifth Cause of Action should still be dismissed because it is nothing more than a duplicative breach of contract claim that is disguised as a fraud claim.

## ARGUMENT

### I.  THS COURT SHOULD STRIKE THE PORTIONS OF PLAINTIFF'S COMPLAINT AND ITS EXHIBITS, AS WELL AS THE FIFTH CAUSE OF ACTION, UNDER THE EXPRESS TERMS OF THE PRE-NEGOTIATION AGREEMENT AND FRE 408

Rule 12(f) of the Federal Rules of Civil Procedure states that "the court may order stricken any pleading, any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Settlement discussions are inadmissible under FRE 408 (and the Pre-Negotiation Agreement is even broader than FRE 408), and accordingly may be stricken from a complaint as

13

immaterial and potentially prejudicial. *Kelly v. L.L. Cool J*, 145 F.R.D. 32, 39-40 (S.D.N.Y. 1992)(granting motion to strike portions of complaint that referenced settlement discussions under Rule 408 as immaterial and potentially prejudicial); *Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*, 407 F. Supp. 2d 401, 404 (D. Conn. 2006)("[i]n light of the strong public policy favoring settlements, and encouraging uninhibited settlement negotiations, the parties' confidentiality agreement will be enforced." (internal citation omitted)); *Berry v. Lee*, 428 F. Supp. 2d 546, 563 (N.D. Tex. 2006)("Courts have used Rule 12(f) to strike allegations from complaints that detail settlement negotiations…"); also see, *E-Z Bows, LLC v. Prof'l Prod. Research Co.*, No. 00 Civ. 8670 (LTS)(GWG), 2003 WL 22416174 at *2 (S.D.N.Y. Oct. 23, 2003). The presumption is even stronger where, as here, the parties executed a broad confidentiality agreement. Further, under Fed R. Civ. P. 12(b)(6), if a party fails to state a claim upon which relief can be granted, such a claim must be dismissed.

The entirety of paragraphs 22-25 and the Fifth Cause of Action of Plaintiff's Complaint (paragraphs 57-62), as well as portions of paragraphs 27, 28, 29 and 32 have been improperly included in the Complaint in violation of the Pre-Negotiation Agreement (which is even broader than FRE 408) and FRE 408. As a result, these portions of the Complaint should be stricken in accordance with Fed. R. Civ. P. 12(f). Further, because each and every one of the allegations in the Fifth Cause of Action violates the Pre-Negotiation Agreement, Plaintiff has failed to state a claim necessitating dismissal under Fed R. Civ. P. 12(b)(6).

Specifically, Plaintiff's Complaint acknowledges that the parties convened a meeting on November 20, 2010 "to discuss a restructuring of the Senior Loan." As a result, all discussions at that meeting were subject to the terms of the Pre-Negotiation Agreement, which includes, but is

not limited to Section 6 of the Pre-Negotiation Agreement, which states, in pertinent part, as follows:

> From and after the date hereof, <u>all evidence of conduct and communications of any nature whatsoever</u> (whether oral or written, or express or implied) of any of the Parties <u>in connection with the discussions that are the subject of this Agreement, or in any meetings or correspondence relating to possible modification of the Loan Documents</u> (in each case, whether in the future or prior to the date hereof) <u>from and after July 13, 2009 shall be inadmissible for any purpose whatsoever in any judicial or similar proceeding. The foregoing sentence is intended to be broader than the restrictions on admissibility that may be contained in the Evidence Code of the State of New York and Rule 408 of the Federal Rules of Evidence.</u> Likewise, the discussions and all documents prepared in connection therewith shall be confidential and shall not be disclosed to any third party except for reasonably necessary disclosures to agents, lenders, investors, representatives, lawyers, and accountants, and except as may be required by law. <u>Furthermore, such conduct, communications, discussions and documents shall not be used in any litigation to indicate culpability, weakness of position, admission of liability or otherwise admit any obligations due and owing to or from any Party hereto.</u>

Plaintiff readily acknowledges that he signed the Pre-Negotiation Agreement and cannot dispute the intent or the meaning of the Pre-Negotiation Agreement. As such, the Pre-Negotiation Agreement should be enforced. *See Fisher-Price*, at 404. Accordingly, the Pre-Negotiation Agreement is operative and Plaintiff's references to the November 20, 2010 discussions, which *inter alia*, were made "<u>in connection with the discussions that are the subject of this Agreement, or in any meetings or correspondence relating to possible modification of the Loan Documents</u>", violate the express terms of the Pre-Negotiation Agreement.

As a result, the Court should strike all references and alleged representations made at that meeting from Plaintiff's Complaint. *DEV Indus., Inc. v. Rockwell Graphic Sys., Inc.* 1992 WL 100908 *2 (N.D. Ill. May 4, 1992) (striking portions of complaint based upon confidential information in violation of a protective order).

4187-002 Doc# 113

Negotiation Agreement. As a result, they are barred by the express terms of the Pre-Negotiation Agreement and should be stricken.

In sum, as the November 20, 2010 meeting and any subsequent discussions flowing therefrom are inadmissible, the Court should: (1) strike paragraphs 22-25, 57-62 of Plaintiff's Complaint and Exhibits A-C attached thereto in their entirety pursuant to Fed. R. Civ. P. 12(f); (2) strike the aforementioned portions of paragraphs 27, 28, 29 and 32 in accordance with Fed. R. Civ. P. 12(f); and (3) dismiss the Fifth Cause of Action pursuant to Fed R. Civ. P. 12(b)(6).

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS THE FIFTH CAUSE OF ACTION BECAUSE IT IS DUPLICATIVE OF PLAINTIFF'S FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT

Plaintiff's Fifth Cause of Action for fraud should also be independently dismissed pursuant to Fed R. Civ. P. 12(b)(6). It is well settled that is no cause for fraud for allegedly entering into a contract with the intention of not carrying out the contract -- it is still only a claim for breach of contract. *Id. PSI Int'l, Inc. v. Ottimo*, 272 A.D.2d 279, 708 N.Y.S.2d 100 (1st Dep't 2000). When a party is alleged to have an intention not to honor the contract, this is not a claim for fraud as it is just a willingness of that party to bear the burden of his breach of the contract. *Sudul v. Computer Outsourcing Serv.*, 868 F. Supp 59, 62 (S.D.N.Y. 1994) (holding that "[plaintiff] should not be allowed to bootstrap a breach of contract claim into a fraud claim by simply including his complaint allegation that defendant never intended to uphold his end of the deal")..

Put another way, in New York there is no viable cause of action for fraud when the only fraud charges relate to a breach of contract. *McMahan & Co. v. Bass*, 250 A.D.2d 460, 462, 673 N.Y.S.2d 19, 21 (1st Dep't 1998) ("restating a cause of action for breach of contract in various guises does not enhance the pleading"); *Ortix Credit Alliance*, 256 A.D.2d 114, 682 N.Y.S.2d

17

160 (1st Dep't 1998); *Dalton v. Union Bank of Switz.*, 134 A.D.2d 174, 176, 520 N.Y.S. 2d 764, 766 (1st Dep't 1987); *Volk v. Ligget*, No. 96 Civ. 1921 (SS), 1997 WL 107458, *4 (S.D.N.Y. March 11, 1997).

Plaintiff's Fifth Cause of Action for fraud is essentially a claim that Defendants failed to provide him with a deed in lieu of foreclosure and further, that Defendant Highland "had no intention of supplying plaintiff with a form of deed." Complaint, Paragraph 60.  However, these allegations are nothing more than a transparent attempt to restate Plaintiff's breach of contract claim under the guise of tort which is not allowed under New York law.  *Sudul v. Computer Outsourcing Servs.*, 868 F. Supp. 59, 62-63 (S.D.N.Y. 1994).

Accordingly, based upon the facts and claims alleged by Plaintiff in the Fifth Cause of Action, Plaintiff has improperly sought to bootstrap a claim for fraud to a breach of contract claim. As such, the Fifth Cause of Action is duplicative of Plaintiff's Fourth Cause of Action for breach of contract and should be dismissed in its entirety.

## CONCLUSION

The remedy for Plaintiff's breach of the Pre-Negotiation Agreement is straightforward – any reference to the parties' negotiations must be stricken from the Complaint and any cause of action flowing therefrom should be dismissed.  As a result, the Court should grant Defendants' motion in its entirety and issue an Order: (1) striking paragraphs 22-25 of Plaintiff's Complaint and Exhibits A-C attached thereto in their entirety; (2) striking portions of paragraphs 27, 28, 29 and 32 in accordance with Fed. R. Civ. P. 12(f); and (3) dismissing the Fifth Cause of Action of Plaintiff's Complaint pursuant to Fed R. Civ. P. 12(b)(6). Further, even assuming that the aforementioned allegations are not stricken, Plaintiff's Fifth Cause of Action should be

4187-002 Doc# 113

independently dismissed pursuant to Fed R. Civ. P. 12(b)(6) because it improperly seeks to bootstrap a fraud claim to a breach of contract claim.

Dated: New York, New York
     April 30, 2010

MEISTER SEELIG & FEIN LLP

By: Jeffrey Schreiber (JS-6182)
     David E. Ross (DR-1513)
     Attorneys for Defendants
     2 Grand Central Tower
     140 East 45th Street, 19th Floor
     New York, New York 10017
     (212) 655-3500

19