UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHAWN C. CARTER,

               Plaintiff/Counterdefendant,

   -against-

HIGHLAND CAPITAL MANAGEMENT, L.P.
and NEXBANK SSB,

               Defendants/Counterclaimants.
------------------------------------------------------------------X
HIGHLAND CAPITAL MANAGEMENT, L.P.
and NEXBANK SSB,

               Third-Party Plaintiffs,

   -against-

ABRAM SHNAY and CHARLES BLAICHMAN

               Third-Party Defendants.
------------------------------------------------------------------X

Index No. 10 CIV 0854 (RMB)(HBP)

**ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**

Defendants/Counterclaimants, Highland Capital Management, L.P. ("Highland") and Nexbank SSB ("Nexbank") (collectively Highland and Nexbank are referred to as "Defendants"), as and for their Answer and Counterclaims to the Complaint filed by Plaintiff Shawn C. Carter's ("Plaintiff" or "Carter") dated February 2, 2010 (the "Complaint) in this action, and their Third-Party Complaint as against Third-Party Defendants Abram Shnay and Charles Blaichman, respond and allege as follows:

## JURISDICTION AND VENUE

   1.    Admit the allegations contained in paragraph 1 of the Complaint.

   2.    Admit the allegations contained in paragraph 2 of the Complaint.

1

## THE PARTIES

3. Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 3 of the Complaint.

4. Admit the allegations contained in paragraph 4 of the Complaint.

5. Admit the allegations contained in paragraph 5 of the Complaint.

## STATEMENT OF FACTS

Relevant Background And
The Pertinent Transactions

6. Deny the allegations contained in paragraph 6 of the Complaint except admit only that Plaintiff was a guarantor of the loan and had certain obligations pursuant to a written guaranty and refer to the guaranty for a complete and accurate statement of its terms.

7. Admit the allegations contained in paragraph 7 of the Complaint.

8. Admit the allegations contained in paragraph 8 of the Complaint.

9. Deny the allegations contained in paragraph 9 of the Complaint except refer to the Senior Loan Agreement for a complete and accurate statement of its terms.

10. Admit the allegations contained in paragraph 10 of the Complaint.

11. Admit the allegations contained in paragraph 11 of the Complaint.

12. Deny the allegations contained in paragraph 12 of the Complaint except refer to the Carry Guaranty for a complete and accurate statement of its terms.

13. Deny the allegations contained in paragraph 13 of the Complaint except refer to the Bad Acts Guaranty for a complete and accurate statement of its terms.

14. Admit the allegations contained in paragraph 14 of the Complaint.

15. Admit the allegations contained in paragraph 15 of the Complaint.

16. Deny the allegations contained in paragraph 16 of the Complaint except refer to the Mezz Carry Guaranty for a complete and accurate statement of its terms.

17. Deny the allegations contained in paragraph 17 of the Complaint except refer to the Mezz Carry Guaranty for a complete and accurate statement of its terms.

18. Admit the allegations contained in sentences 1, 2 and 3 of paragraph 18 of the Complaint but deny the allegations contained in sentence 4 of paragraph 18 of the Complaint.

19. Admit the allegations contained in paragraph 19 of the Complaint.

The Abortive Negotiations
with Highland

20. Admit that Fee Owner contacted Highland concerning the Senior Loan prior to its maturity date but deny knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 20 of the Complaint.

21. Admit the allegations contained in paragraph 21 of the Complaint.

22. Deny the allegations contained in paragraph 22 of the Complaint except admit that between August and through November of 2009, Defendants, Fee Owner and the guarantors engaged in discussions under the terms of the Pre-Negotiation Agreement.

23. Admit that the parties had a meeting on November 20, 2009, but state that any and all discussions that took place at that meeting are confidential and subject to the terms of the parties' Pre-Negotiation Agreement (as defined in the Complaint) and Plaintiff's improper inclusion of such discussions is currently the subject of motion practice before this Court. To the extent a response is required, Defendants deny the remaining allegations contained in paragraph 23 of the Complaint.

24. Admit that the parties had a meeting on November 20, 2009, but state that any and all discussions that took place at that meeting are confidential and subject to the terms of the

3

parties' Pre-Negotiation Agreement (as defined in the Complaint) and Plaintiff's improper inclusion of such discussions is currently the subject of motion practice before this Court. To the extent a response is required, Defendants deny the remaining allegations contained in paragraph 24 of the Complaint.

25. Deny the allegations contained in paragraph 25 of the Complaint except admit that Plaintiff's counsel and counsel for Defendants exchanged certain e-mails, and further state that the e-mails annexed as Exhibits A-C of the Complaint are confidential and subject to the terms of the parties' Pre-Negotiation Agreement (as defined in the Complaint) and that Plaintiff's inclusion of such e-mails is currently the subject of motion practice before this Court.

26. Deny the allegations contained in paragraph 26 of the Complaint except refer to the Carry Guaranty for a complete and accurate statement of its terms.

27. Deny the allegations contained in paragraph 27 of the Complaint except refer to the Plaintiff's December 22, 2010 correspondence and attachments thereto for a complete and accurate statement of its terms.

28. Deny the allegations contained in paragraph 28 of the Complaint.

29. Deny the allegations contained in paragraph 29 of the Complaint.

30. Deny the allegations contained in paragraph 30 of the Complaint, deny any breach of the escrow conditions, except admit that Plaintiff's counsel took the position that Highland was in breach of the escrow conditions.

31. Deny the allegations contained in paragraph 31 of the Complaint except admit that Highland's counsel sent a letter to plaintiff's counsel on December 31, 2009 and refer the Court to its content.

32. Deny the allegations contained in the first sentence of paragraph 32 of the Complaint except admit that Plaintiff's counsel sent a letter to Highland's counsel and refer the Court to its content.

33. Deny the allegations contained in the first sentence of paragraph 33 of the Complaint except admit that Plaintiff's counsel sent a letter to Highland's counsel and refer the Court to its content.

34. Admit the allegations contained in paragraph 34 of the Complaint.

### FIRST CAUSE OF ACTION

35. Defendants repeat and reallege paragraphs 1-34 above as if fully set forth herein.

36. Admit that paragraph 36 of the Complaint sets forth Plaintiff's contentions and denies the contentions/allegations contained in paragraph 36 of the Complaint.

37. Admit that Highland disputes each of the contentions contained in paragraph 36(a)-(d) of the Complaint.

38. Admit the allegations contained in paragraph 38 of the Complaint.

39. Deny the allegations contained in paragraph 39 of the Complaint.

### SECOND CAUSE OF ACTION

40. Defendants repeat and reallege paragraphs 1-39 above as if fully set forth herein.

41. Admit that paragraph 41 of the Complaint sets forth Plaintiff's contentions and denies the contentions/allegations contained in paragraph 41 of the Complaint.

42. Admit only that on October, 2009 after the Senior Loan was in default, Highland, pursuant to the express authorization given to Highland under the Senior Loan Agreement properly withdrew the Environmental Reserve. Defendants deny the remaining allegations contained in paragraph 42 of the Complaint. the allegation contained in the first sentence of

paragraph 42 of the Complaint but aver that Highland had the right to withdraw said funds in accordance with 7.4.2 of the Loan Agreement. Deny the remaining allegations contained in the second, third and fourth sentences of paragraph 42 of the Complaint.

43. Deny the allegations contained in paragraph 43 of the Complaint.

44. Deny the allegations contained in paragraph 44 of the Complaint

45. Deny the allegations contained in paragraph 45 of the Complaint.

## THIRD CAUSE OF ACTION

46. Defendants repeat and reallege paragraphs 1-45 above as if fully set forth herein.

47. Deny the allegations contained in paragraph 47 of the Complaint except refer to Section 1.5 of the Carry Guaranty for a complete and accurate statement of its terms.

48. Deny the allegations contained in paragraph 48 of the Complaint.

49. Deny the allegations contained in paragraph 49 of the Complaint.

50. Deny the allegations contained in paragraph 50 of the Complaint.

## FOURTH CAUSE OF ACTION

51. Defendants repeat and reallege paragraphs 1-50 above as if fully set forth herein.

52. The allegations contained in paragraph 52 sets forth no allegations against Defendants, only legal conclusions, as such, no response is required and Defendants respectfully refer all such questions of law to the Court, except refer to Section 1.2 of the Carry Guaranty and the Mezz Carry Guaranty for a complete and accurate statement of their terms.

53. The allegations contained in paragraph 53 sets forth no allegations against Defendants, only legal conclusions, as such, no response is required and Defendants respectfully refer all such questions of law to the Court.

54. Deny the allegations contained in paragraph 54 of the Complaint.

(4187-002) Doc# 144

55. Deny the allegations contained in paragraph 55 of the Complaint.

56. Deny the allegations contained in paragraph 56 of the Complaint.

**FIFTH CAUSE OF ACTION**

57. Defendants repeat and reallege paragraphs 1-56 above as if fully set forth herein.

58. The allegations contained in paragraph 58 sets forth no allegations against Defendants, only legal conclusions, as such, no response is required and Defendants respectfully refer all such questions of law to the Court, except refer to Section 1.2 of the Carry Guaranty and the Mezz Carry Guaranty for a complete and accurate statement of their terms.

59. Admit that the parties had a meeting on November 20, 2009, but state that any and all discussions that took place at that meeting are confidential and subject to the terms of the parties' Pre-Negotiation Agreement (as defined in the Complaint) and that plaintiff's inclusion of such discussions is currently the subject of motion practice before this Court. To the extent a response is required, Defendants deny the remaining allegations contained in paragraph 59 of the Complaint

60. Deny the allegations contained in paragraph 60 of the Complaint and further state that the allegations referenced in paragraph 60 of the Complaint are confidential and subject to the terms of the parties' Pre-Negotiation Agreement (as defined in the Complaint) and that plaintiff's inclusion of such discussions is currently the subject of motion practice before this Court.

61. Deny the allegations contained in paragraph 61 of the Complaint.

62. Deny the allegations contained in paragraph 62 of the Complaint

(4187-002) Doc# 144

## AFFIRMATIVE DEFENSES

63. Plaintiff's Complaint fails to state a cause of action upon which relief can be granted.

64. Plaintiff's Complaint should be dismissed because he has suffered no compensable damages.

65. Plaintiff's claims are barred by his own prior breaches of the relevant agreements.

66. Plaintiff's claims are barred by the doctrine of unclean hands.

67. Plaintiff's claims are barred by the relevant agreements.

68. Plaintiff's claims are barred by his failure to act in good faith.

**WHEREFORE**, Defendants demand that the Complaint and cause of action against them be dismissed in its entirety.

## FACTS COMMON TO ALL COUNTERCLAIMS AND THIRD PARTY CLAIMS

69. Defendants repeat and reallege paragraphs 1-68 above as if fully set forth herein.

70. Defendant/Counterclaimant/Third-Party Plaintiff Highland is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business in Dallas, Texas.

71. Defendant/Counterclaimant/Third-Party Plaintiff NexBank is a savings bank organized and existing under the laws of the State of Texas with its principal place of business in Dallas Texas.

72. Upon information and belief, Plaintiff/Counterdefendant Shaun C. Carter ("Plaintiff" or "Carter") is a citizen of the State of New York.

73. Upon information and belief, Third-Party Defendant Abram Shnay ("Shnay") is a citizen of the State of New York.

74. Upon information and belief, Third-Party Defendant Charles Blaichman ("Blaichman", collectively, Carter, Shnay and Blaichman are referred to as the "Guarantors" ) is a citizen of the State of New York.

75. This Court has jurisdiction of this action pursuant to 28 U.S.C. 1332(a)(1), as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

76. Venue is proper on this district pursuant o 28 U.S.C. 1391(a)(2) in that a substantial part of the events giving rise to these claims occurred in this district.

77. On August 6, 2007, non-party J Hotels Fee Owner LLC ("Fee Owner"), purchased the real property located at 511 West 21st Street, New York, New York (the "Property")

78. On August 6, 2007, Fee Owner entered into a loan agreement with Column Financial, Inc. ("Column") (the "Senior Loan") pursuant to which it borrowed $52,000,000 (the "Senior Loan Agreement").

79. Pursuant to Section 7.4.1 of the Senior Loan Agreement, Fee Owner deposited certain funds into a reserve account (the "Environmental Reserve") in the amount of $1,900,000.

80. Further, Section 7.5 of the Senior Loan Agreement states in relevant part:

> Upon the occurrence of an Event of Default, Lender may, in addition to any and all other rights and remedies available to Lender, apply any sums then present in any or all of the Reserve Funds to the Payment of the Debt in any order in its sole discretion…

81. On August 6, 2007, as inducement for Column to enter into the Senior Loan Agreement, the Guarantors each entered into a "Guaranty of Carry Obligations" (the "Carry Guaranty") with regard to the Senior Loan Agreement.

82. Pursuant to the Carry Guaranty, the Guarantors jointly and severally guaranteed the payment of certain "Guaranteed Obligations", including but not limited to, real estate taxes, insurance and interest accruing on the Senior Loan as well as all professional fees.

83. Column subsequently assigned all of its rights and interest in the Senior Loan, the Senior Loan Agreement, the Carry Guaranty and all other associated documents to NexBank. Since then, NexBank has acted as servicer of the Senior Loan on behalf of Highland and Highland has been the owner of the Senior Loan, the Senior Loan Agreement and all other associated documents.

84. The Senior Loan matured on August 6, 2009 (the "Maturity Date").

85. However, as of the Maturity Date, Fee Owner failed to make all necessary payments thereby causing an "Event of Default" pursuant to Section 8.1(a)(i) of the Senior Loan Agreement.

86. As a further consequence of Fee Owner's default, pursuant to Section 7.5 of the Senior Loan Agreement, upon the event of Fee Owner's default, NexBank was entitled to draw down and apply any and all reserve funds, including the "Environmental Reserve" to the payment of the outstanding debt "in any order in its sole discretion."

87. Prior to the Maturity Date, Fee Owner and the Guarantors approached Defendants to discuss amongst other things, a potential modification or extension of the Senior Loan Agreement.

88. However, prior to any such discussions, Defendants insisted that Fee Owner, Guarantors and the Defendants execute a "Pre-Negotiation Agreement" in which *inter alia*, the parties would agree that the contents of any such discussions would be inadmissible for any reason.

89. Fee Owner and the Guarantors agreed and on August 3, 2010, Fee Owner, the Guarantors and Defendants executed a "Pre-Negotiation Agreement" which states, amongst other things that:

> From and after the date hereof, <u>all evidence of conduct and communications of any nature whatsoever</u> (whether oral or written, or express or implied) of any of the Parties <u>in connection with the discussions that are the subject of this Agreement, or in any meetings or correspondence relating to possible modification of the Loan Documents</u> (in each case, whether in the future or prior to the date hereof) <u>from and after July 13, 2009 shall be inadmissible for any purpose whatsoever in any judicial or similar proceeding. The foregoing sentence is intended to be broader than the restrictions on admissibility that may be contained in the Evidence Code of the State of New York and Rule 408 of the Federal Rules of Evidence.</u> Likewise, the discussions and all documents prepared in connection therewith shall be confidential and shall not be disclosed to any third party except for reasonably necessary disclosures to agents, lenders, investors, representatives, lawyers, and accountants, and except as may be required by law. <u>Furthermore, such conduct, communications, discussions and documents shall not be used in any litigation to indicate culpability, weakness of position, admission of liability or otherwise admit any obligations due and owing to or from any Party hereto.</u>

(Emphasis added).

90. Additionally, on August 13, 2010 and August 25, 2009, two letters were sent out to amongst others, the Fee Owner and the Guarantors notifying them of the Senior Loan's default and demanding payment. To date, the Senior Loan remains in default.

91. Between August of 2009 and December of 2009, Defendants, Fee Owner and the Guarantors engaged in discussions that were subject to the Pre-Negotiation Agreement.

92. Soon thereafter, by a letter dated December 22, 2009 and certain attachments thereto, Carter made an attempt to stop the "carrying costs" accruing under the Carry Guaranty by making what he alleged was a proper "Tender Delivery" in accordance with Section 1.2 of the Carry Guaranty.

93. In that regard, Section 1.2 of the Carry Guaranty states as follows:

(4187-002) Doc# 144

> "**Tender Date**" shall mean the date on which (i) Borrower shall have tendered to Lender a deed in lieu of foreclosure or Lender shall have successfully consummated a foreclosure sale with respect to the Property and (in the case of foreclosure) the deed therefore shall have been delivered to the successful bidder, (ii) Borrower and Guarantor shall have signed and delivered to Lender a reaffirmation of the Environmental Indemnity in a form reasonably acceptable to Lender, (iii) Borrower shall have replenished or supplemented the Environmental Remediation Reserve Account to the extent necessary so that the total amount on deposit equals 125% of an amount sufficient to complete the Remediation Work, such amount to be reasonably determined by Lender and Lender's environmental consultant (it being understood that Lender shall cause its environmental consultant to provide such amount as soon as practicable after it is determined that a deed in lieu of foreclosure will be tendered by Borrower or that a foreclosure sale is imminent), (iv) Lender shall have received payment in full of all sums required to be paid pursuant to this Guaranty through the date of such tender, (v) Lender shall have received any and all transfer taxes and filing fees payable with respect to the conveyance of the Property pursuant to the deed in lieu of foreclosure and (vi) Lender shall have received transfer tax forms executed by Borrower and other necessary and/or appropriate documents relating to the conveyance of the Property or as reasonably determined by Lender.

94.     However, Plaintiff/Guarantor Carter's "Tender Delivery" failed to meet the requirements of Section 1.2 of the Carry Guaranty because amongst other reasons, despite due demand by Defendants, he failed to make any attempt to replenish the Environmental Reserve in accordance with that Section.

95.     Further, to date neither Schnay nor Blaichman have attempted to make a "Tender Delivery" in accordance with Section 1.2 of the Carry Guaranty and as a result, they are jointly and severally liable for all of the "carrying costs".

96.     Further, pursuant to the terms of the Carry Guaranty, as there has been an undisputable event of default under the Senior Loan Agreement, the Guarantors are jointly and severally liable for replenishment of the Environmental Reserve in accordance with *inter alia*, the Senior Loan Agreement and the Carry Guaranty.

(4187-002) Doc# 144

97.     As a result, until the Guarantors make a proper "Tender Delivery" carrying costs will continue to accrue.

## AS AND FOR A FIRST COUNTERCLAIM
**(Breach of the Carry Guaranty Against Plaintiff/Counterdefendant Carter)**

98.     Defendants repeat and reallege paragraphs 1-97 above as if fully set forth herein.

99.     Since the Maturity Date, the Senior Loan and the Senior Loan Agreement have remained in default.

100.    Soon after this "Event of Default", in accordance with and as is permitted by the terms of the Senior Loan Agreement, the entirety of the Environmental Reserve was drawn down by Defendants.

101.    Pursuant to the terms of the Senior Loan Agreement and the Carry Guaranty, Plaintiff is jointly and severally liable (along with Shnay and Blaichman) for certain "Guaranteed Obligations" including, but not limited to, all taxes, insurance, accrued interest and upon default of the Senior Loan Agreement, replenishment of the Environmental Reserve.

102.    Pursuant to *inter alia* Section 1.2 of the Carry Guaranty, Plaintiff could terminate his obligations under the Carry Guaranty if *inter alia,* he made a proper "Tender Delivery".

103.    On or about December 22, 2010 and January 5, 2010, Plaintiff attempted to make a "Tender Delivery" in accordance with Section 1.2 of the Carry Guaranty (the "Attempted Tender Deliveries").

104.    The Attempted Tender Deliveries failed to comply with *inter alia* Section 1.2 of the Carry Guaranty.

105.    As Plaintiff has failed to make a proper Tender Delivery, Plaintiff remains jointly and severally liable for the "Guaranteed Obligations" and all carrying costs, which include, but are not limited to, accruing default interest on the Senior Loan's principal balance, attorneys

13

fees, costs and disbursements and pursuant to the Senior Loan Agreement, Plaintiff is also required to replenish the Environmental Reserve.

106.   As a result of Plaintiff's failure to make a proper "Tender Delivery" in accordance with the terms of the Carry Guaranty, the "Guaranteed Obligations" have continued to accrue and Defendants have been damaged in an amount to be determined but currently believed to be in excess of $6,000,000 and continuing.

107.   Further, as Plaintiff has failed to replenish the required Remediation Reserve Defendants have been damaged in an amount to be determined, but believed to be approximately $2,117,500.

## AS AND FOR A FIRST THIRD-PARTY CLAIM
### (Breach of the Carry Guaranty Against Third-Party Defendants Shnay & Blaichman)

108.   Defendants repeat and reallege paragraphs 1-107 above as if fully set forth herein

109.   Since the Maturity Date, the Senior Loan and the Senior Loan Agreement have remained in default.

110.   Soon after this "Event of Default", in accordance with and as is permitted by the terms of the Senior Loan Agreement, the entirety of the Environmental Reserve was drawn down by Defendants.

111.   Pursuant to the terms of the Senior Loan Agreement and the Carry Guaranty, Shnay and Blaichman are jointly and severally liable (along with Plaintiff) for certain "Guaranteed Obligations" including, but not limited to, all taxes, insurance, accrued interest and upon default of the Senior Loan Agreement, replenishment of the Environmental Reserve.

(4187-002) Doc# 144

112. Pursuant to *inter alia* Section 1.2 of the Carry Guaranty, Shnay and Blaichman could terminate their joint and several obligations under the Carry Guaranty if *inter alia*, they made a proper "Tender Delivery".

113. To date, neither Shnay nor Blaichman has made a Tender Delivery with *inter alia* Section 1.2 of the Carry Guaranty.

114. As Shnay and Blaichman have failed to make a proper Tender Delivery, they remain jointly and severally liable for the "Guaranteed Obligations" and all carrying costs, which include, but are not limited to, accruing default interest on the Senior Loan's principal balance, attorneys fees, costs and disbursements and pursuant to the Senior Loan Agreement, Plaintiff is also required to replenish the Environmental Reserve.

115. As a result of their failure to make a proper "Tender Delivery", the "Guaranteed Obligations" have continued to accrue and Defendants have been damaged in an amount to be determined but currently believed to be in excess of $6,000,000 and continuing.

116. Further, Shnay and Blaichman have failed to replenish the required Remediation Reserve and as a result, Defendants have been damaged in an amount to be determined, but believed to be approximately $2,117,500.

**WHEREFORE**, Defendants demand judgment against Plaintiff on their Counterclaim and against Shnay and Blaichman on their Third-Party Complaint as follows:

a) A money judgment against Plaintiff, Shnay and Blaichman, jointly and severally for the "Guaranteed Obligations" that have continued to accrue in an amount to be determined but currently believed to be in excess of $6,000,000 and continuing;

(4187-002) Doc# 144

b)  A money judgment against Plaintiff, Shnay and Blaichman, jointly and severally to replenish the required remediation reserve in an amount to be determined, but believed to be approximately $2,117,500;

c)  For the attorneys' fees, costs and disbursements of this action; and

d)  For such other and different relief as the Court deems just and proper

Dated: New York, New York
      June 7, 2010

MEISTER SEELIG & FEIN LLP

By: Jeffrey Schreiber, Esq.
    David E. Ross, Esq.
2 Grand Central Tower
140 East 45th Street – 19th Floor
New York, New York 10017
(212) 655-3500

*Attorneys for Defendants/Counterclaimants/Third-Party Plaintiffs*
Highland Capital Management, L.P. and Nexbank SSB